UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MERIAM RATNER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OVASCIENCE, INC., MICHELLE DIPP, and CHRISTOPHER A. BLECK,<br><br>Defendants. | Case No. 1:13-cv-12286<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Meriam Ratner ("Ratner"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding OvaScience, Inc. ("OvaScience" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased OvaScience securities between February 25, 2013 and September 10, 2013, inclusive (the "Class Period"), seeking to recover damages caused by

defendants' violations of the federal securities laws and to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. OvaScience is a life sciences company focused on the discovery, development and commercialization of new treatments for infertility. The Company's patented technology is based on the discovery of egg precursor cells (EggPC$^{SM}$), which are found in the ovaries. By applying proprietary technology to identify and purify EggPCs, AUGMENT$^{SM}$ aims to improve egg quality and increase the success of in vitro fertilization ("IVF"). AUGMENT uses a process of removing mitochondria from a woman's egg precursor cells and injecting them into one of her egg cells, along with a sperm cell, during IVF. Adding the mitochondria is intended to permit women with poor quality gametes to conceive with their own eggs rather than donated ones.

3. Throughout the Class Period, Ovascience represented to the FDA and investors that it believed that Augment qualified for designation as a 361 HCT/P, which allows human cellular and tissue based products to be tested and marketed without FDA licensure. Under FDA guidelines, organisms can only achieve this designation if they are "only minimally manipulated", i.e., the process does not alter "the relevant biological characteristics of the cells or tissue". Here, given AUGMENT's transfer of critical genetic material from the donor egg to the patient's, there was simply no basis for the Company to maintain that the AUGMENT treatment only involved "minimal" manipulation.

4. Ultimately, the FDA rejected Ovascience's faulty designation. On September 10, 2013, the Company disclosed that it was suspending enrollment of AUGMENT in the U.S. after receiving an "untitled" letter from the FDA "questioning the status of AUGMENT as a 361 HCT/P and advising the Company to file an Investigational New Drug (IND) application."

5. On this news, OvaScience shares declined $3.325 per share or more than 23%, to close at $10.95 per share on September 11, 2013.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under and pursuant to Sections l0 (b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule l0b-5 promulgated thereunder by the SEC, 17 C.F.R § 240.10b-5.

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9. Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). OvaScience maintains its principal place of business in this District and many of the acts and practices complained of occurred in substantial part herein.

10. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

11. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased OvaScience securities at artificially inflated prices during the Class Period and was damaged upon the release of the corrective disclosure.

12. Defendant OvaScience is a corporation organized under the laws of the state of Delaware, maintaining its principal place of business at 215 First Street, Suite 240, Cambridge, MA 02142. As of April 30, 2013, OvaScience's common stock has been trading on the NASDAQ Global Stock Market ("NASDAQ") under the ticker symbol "OVAS." Prior to April 30, 2013, OvaScience's common stock was traded on the OTC Bulletin Board ("OTC")

13. Defendant Michelle Dipp ("Dipp") has served at all relevant times as the Company's Chief Executive Officer and President.

14. Defendant Christopher A. Bleck ("Bleck") has served at all relevant times as the Company's Vice President and Chief Commercial Officer.

15. The defendants referenced above in ¶¶13 and 14 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

## BACKGROUND

16. OvaScience is a life science company developing proprietary products to improve the treatment of female infertility. The Company's first product candidate is AUGMENT, which stands for autologous germline mitochondria energy transfer. The Company is designing AUGMENT to increase the success of in vitro fertilization ("IVF") by isolating fresh mitochondria from a woman's own egg precursor cells and then adding the mitochondria into the woman's egg during IVF.

17. The FDA regulates HCT/Ps under a two-tiered framework. Certain HCT/Ps that pose greater risks, are regulated as drugs, biologics or medical devices by the FDA and are subject to the investigational new drug ("IND") requirements and premarket review and approval requirements. Other HCT/Ps are exempt from these requirements because the FDA believes that

they present a lower risk and are called 361 HCT/Ps under section 361 of the Public Health Service Act.

18. According to the Company's Form 10-K for the year ended December 31, 2012, the FDA will regulate an HCT/P as a 361 HCT/P if it meets all of the following criteria: (1) the HCT/P is minimally manipulated, (2) the HCT/P is intended for homologous use only, as reflected by the labeling, advertising, or other indications of the manufacturer's objective intent, (3) the manufacture of the HCT/P does not involve the combination of the cells or tissues with another article, with a few exceptions, and (4) either: (a) the HCT/P does not have a systemic effect and is not dependent upon the metabolic activity of living cells for its primary function, or (b) the HCT/P has a systemic effect or is dependent upon the metabolic activity of living cells for its primary function and (i) is for autologous use, (ii) is for allogeneic use in a first or second degree blood relative, or (iii) is for reproductive use.

## MATERIALLY FALSE AND MISLEADING STATEMENTS MADE DURING THE CLASS PERIOD

19. On February 25, 2013, the Company filed an annual report with the SEC on a Form 10-K for the year ended December 31, 2012 which was signed, among others, by Defendants Dipp and Bleck. In addition, the Form 10-K contained certifications pursuant to the Sarbanes-Oxley Act of 2002 signed by Defendants Dipp and Bleck, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

20. The 10-K represented the following, in relevant part concerning AUGMENT:

> We believe that the FDA will regulate the HCT/Ps involved in the AUGMENT procedure as 361 HCT/Ps. This is because, in our view, both the mitochondria taken from egg precursor cells and the eggs into which those mitochondria are injected during IVF (1) are minimally manipulated, (2) are intended for homologous use only, (3) do not involve the combination of cells or tissue with

5

another article and (4) are dependent upon the metabolic activity of living cells for their primary function and are for reproductive use.

21.    The statements referenced in ¶¶ 19 and 20 above were materially false and/or misleading because they misrepresented and failed to disclose that AUGMENT failed to satisfy the requirements of a 361 HCT/P.  Particularly, the removal of mitochondria from one egg to the egg of the patient did not qualify as "minimal" manipulation.  As a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

## THE TRUTH IS REVEALED

22.    On September 10, 2013, the Company issued a press release announcing the following:

> OvaScience has chosen to suspend enrollment of AUGMENT in the U.S. while moving forward with its plans for enrollment outside of the U.S. On September 6, 2013, the Company received an "untitled" letter from the Food and Drug Administration (FDA) questioning the status of AUGMENT as a 361 HCT/P and advising the Company to file an Investigational New Drug (IND) application. OvaScience anticipates having further discussions with the FDA to present details on AUGMENT and its qualifications as a 361 HCT/P, and to determine the appropriate path forward. OvaScience continues to believe that AUGMENT qualifies as a 361 HCT/P.

23.    On this news, OvaScience shares declined $3.325 per share or more than 23%, to close at $10.95 per share on September 11, 2013.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

24.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired OvaScience securities during the Class Period (the "Class"); and were damaged thereby. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal

6

representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

25. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, OvaScience securities were actively traded on the NASDAQ or OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by OvaScience or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

27. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

28. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of OvaScience;

- whether the Individual Defendants caused OvaScience to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of OvaScience securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

29. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

30. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- OvaScience securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the OTC or NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold OvaScience securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

31. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

32. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

33. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

34. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of OvaScience securities; and (iii) cause Plaintiff and other members of the Class to purchase OvaScience securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

35. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described

above, including statements made to securities analysts and the media that were designed to influence the market for OvaScience securities and options. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about OvaScience's finances and business prospects.

36. By virtue of their positions at OvaScience, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

37. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of OvaScience, the Individual Defendants had knowledge of the details of OvaScience's internal affairs.

38. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of OvaScience. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to OvaScience's businesses, operations, future financial condition and future prospects. As a result of the

dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of OvaScience securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning OvaScience's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased OvaScience securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

39. During the Class Period, OvaScience securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of OvaScience securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said securities or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the Class, the true value of OvaScience securities were substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of OvaScience securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

40. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

41. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and

sales of the Company's securities during the Class Period, upon the disclosure that the Company had disseminated false financial statements to the investing public related to its prospects for FDA approval.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

42.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

43.   During the Class Period, the Individual Defendants participated in the operation and management of OvaScience, and conducted and participated, directly and indirectly, in the conduct of OvaScience's business affairs.  Because of their senior positions, they knew the adverse non-public information regarding OvaScience's NDA submission to the FDA.

44.   As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to OvaScience's financial condition and results of operations, and to correct promptly any public statements issued by OvaScience which had become materially false or misleading.

45.   Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which OvaScience disseminated in the marketplace during the Class Period concerning OvaScience's financial prospects.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause OvaScience to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of OvaScience within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they

participated in the unlawful conduct alleged which artificially inflated the market price of OvaScience securities.

46. Each of the Individual Defendants, therefore, acted as a controlling person of OvaScience. By reason of their senior management positions and/or being directors of OvaScience, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, OvaScience to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of OvaScience and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

47. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by OvaScience.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 16, 2013

By her attorneys,

**/s/ Edward F. Haber**
Edward F. Haber (BBO# 215620)
Adam M. Stewart (BBO# 661090)
**SHAPIRO HABER & URMY LLP**
53 State Street
Boston, MA  02109
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
astewart@shulaw.com

**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP**
Marc I. Gross
Jeremy A. Lieberman
600 Park Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665

**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile:  312-377-1184

*Counsel for Plaintiff*